OPINION OF THE COURT
Peter H. Moulton, J.
In this small claims action, plaintiff Azmy Malek alleges that defendant Societe Air France breached the parties’ contract and engaged in deceptive business practices.
Facts
Plaintiff missed a flight from Paris, France, to Newark, New Jersey, on November 15, 2005, when his connecting flight from Venice was delayed arriving in Paris. Plaintiff does not complain about the delay in leaving Venice; rather he complains of Air France’s response once he arrived in Paris.
Plaintiff testified that he waited eight hours for another flight, on a different carrier, back to the United States. He had to pay for refreshments for himself and his wife during the delay. Additionally, plaintiff stated that Air France staff gave him incorrect information regarding the terminal from which his substitute flight would be leaving, which caused him to walk long distances unnecessarily. This walking aggravated plaintiffs gout and thereby caused him great pain. Plaintiff testified that Air France personnel did not provide him with a wheelchair in Paris, despite his request, and were generally discourteous.
Malek’s substitute flight was to Kennedy Airport (JFK) in New York, not to Newark, which caused him to incur $141 for car fare back to his home in New Jersey. Upon arrival at Kennedy Airport his checked luggage went missing and plaintiff was further delayed making a claim for same. Plaintiff did not recover all his luggage until November 19, 2005. Upon inspection plaintiff found that some personal items in his luggage were broken, including camera equipment, a vase and some wine bottles.
Discussion
From these facts plaintiff asserts claims for breach of contract and for deceptive business practices under General Business Law § 349. Plaintiff did not articulate in detail the precise the *725 ory of these claims at trial. Plaintiffs counsel asserted that the claims arise from defendant’s provision of a substitute flight to Kennedy Airport, rather than to Newark. However, the bulk of plaintiffs testimony concerned the inconvenience and exhaustion he suffered as a result of his eight-hour stay at the airport in Paris.
Air France argued that these state law claims are preempted by the Montreal Convention, successor to the Warsaw Convention. (Convention for International Carriage by Air, May 28, 1999, reprinted in S Treaty Doc No. 106-45, 1999 WL 33292734, 1999 UST LEXIS 175.)
The Montreal Convention contains a preemption provision that applies, inter alia, to claims arising from delay and damaged luggage. However, plaintiff arguably articulated causes of action arising from defendant’s failure to provide him with a substitute flight to Newark, his original destination and the international airport closest to his home. To the extent that this theory underpins plaintiffs breach of contract and deceptive business practices claims, these claims would not appear to be subject to the Convention’s preemption provision. (See Weiss v El Al Israel Airlines, Ltd., 433 F Supp 2d 361 [2006] [Montreal Convention’s preemption provision applies only where an action for damages falls within one of the Convention’s damages provisions].)
Assuming, without deciding, that plaintiff’s claims as framed above are not preempted by the Convention, plaintiff did not prove that the provision of a substitute flight to Kennedy Airport, as opposed to Newark, was either a deceptive business practice or a breach of contract.
Plaintiffs claim under General Business Law § 349 fails as none of the evidence offered at trial tended to show that defendant misled plaintiff in any material way. The substitute flight’s destination was disclosed to Malek. He consented to take that flight. Misrepresentation is an element of the claim. (E.g. Solomon v Bell Atl. Corp., 9 AD3d 49, 54-55 [2004].)
As for his claim that defendant breached the parties’ contract by sending him on another carrier to Kennedy Airport, plaintiff failed to offer into evidence the contract between himself and Air France, which presumably was contained in his ticket. There was evidence that Air France reserved its right on the face of the ticket to substitute an alternate carrier. In any event, plaintiff failed to carry his burden to show that defendant breached its supposed duty to use its best efforts to get him on a plane to Newark, as opposed to JFK.
*726 As noted above, to the extent that plaintiffs General Business Law § 349 and breach of contract claims arise from the delay in obtaining an alternate flight home, and from damage to his luggage, both these state law causes of action are preempted by the Montreal Convention. Article 29 of the Convention provides that if an action for damages, however founded, falls within one of the Convention’s damage provisions, the Convention provides the sole cause of action under which aggrieved persons may seek redress. (See Paradis v Ghana Airways, Ltd., 348 F Supp 2d 106, 111 [2004], affd 2006 WL 2456499, 2006 US App LEXIS 21517 [2006].) Plaintiffs attempt to bring this case under the exception set forth in Weiss v El Al Israel Airlines, Ltd. (433 F Supp 2d 361 [2006]) fails. Weiss dealt with the denial of service, i.e., passengers “bumped” from an overbooked flight, and then not provided with an acceptable alternative. By contrast, this case deals with (1) a delay in providing a forwarding flight after plaintiff missed the flight, and (2) damaged luggage. Delay and damaged luggage are both explicitly dealt with in the Montreal Convention at articles 19 and 17, respectively.
Article 19 provides:
“The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.”
Article 17 provides, in relevant part:
“2. The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier. However, the carrier is not liable if and to the extent that the damage resulted from the inherent defect, quality or vice of the baggage.”
The first question, unaddressed by the parties, is whether this court has jurisdiction over claims arising under the Montreal Convention. Pursuant to article 34 the parties may agree in writing that such disputes be subject to arbitration. There was no showing that the parties’ contract required arbitration, and defendant did not raise that defense herein. Pursuant to article *727 33, a plaintiff may bring an action under the Convention “either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.” (Subd [1].) The first three options do not appear to apply herein. There was no evidence concerning defendant’s domicile or principal place of business, nor was there any evidence as to where plaintiffs ticket was purchased. However, the fourth option, “the court at the place of destination,” applies as the plaintiffs destination was Kennedy Airport in Queens. Defendant made no objection to venue in New York County.
Plaintiff’s testimony was credible concerning the inconvenience and discomfort caused by the lengthy delay in finding a substitute flight back to the United States. He also testified credibly about the damage to his luggage. He offered receipts totaling $116.13 for new camera equipment and labor. He did not have receipts for the wine or the vase. One of his claim letters sent to Air France, admitted into evidence, sets forth $250 for a Murano vase, $160 for the wine, $90 for dry cleaning (presumably caused by the broken wine bottles), and $130 for two paintings.
Defendant offered no witnesses. There was no evidence contradicting plaintiffs testimony.
Article 22 of the Convention sets a cap of “4 150 Special Drawing Rights” (subd [1]) for a claim of delay, and “1 000 Special Drawing Rights” (subd [2]) for damage to checked baggage. “Special Drawing Rights” refers to a fluctuating valuation formula used by the International Monetary Fund (IMF) to calculate values in a given nation’s currency. According to the IMF Web site (<www.imf.org>), on September 7, 2006, one special drawing right was worth 1.483660 dollars, which means that a claimant’s maximum recovery would be $6,157.18 for delay, and $1,483.66 for damage to baggage.
Based on all the evidence at trial the court finds that plaintiff is entitled to recover a total of $1,000 for the damage to his luggage and for damage stemming from his delay. The clerk shall enter judgment for $1,000 in favor of plaintiff and against defendant, with interest from November 18, 2005.